Turley, J.
delivered the opinion of the court.
James Skeggs departed this life in the year 1840, having previously published his last will and testament, in substance as follows: “ I give and bequeath all my lands to my beloved wife, Nancy Skeggs, during her widowhood; at the end of her widowhood, or at the end of her life, my lands and the profits thereof, to be equally divided between my four sons, William. Henry, John and Eli; my negroes, which are four in number, Ned,' Arthur, Mariah and her son. Peter, I also give and bequeath to my wife, Nancy Skeggs, during her widowhood, or during her life, except she marries. If she marries, I give and bequeath the negro man, Ned, to her, and the other three negroes and their increase and profits to be equally divided among my children. If she never marries, at her death, the four negroes, I *32 give to all my children, every one to have share and share alike. She in consideration is to bring up, maintain and educate all my children.”
In 1344, Nancy Skeggs contracted a second marriage with the complainant, James Hawkins, and they jointly filed this bill of complaint against the administrator, with the will annexed, of James Skeggs, deceased, asking of the court an exposition of the interest of Nancy Skeggs under the will, and a decree in her favor according thei’eto. This bill charges that after the death of James Skeggs, the negroes devised to Nancy Skeggs, during her widowhood or natural life, were, by her consent, hired out by the administrator, and- the proceeds thereof, applied to the payment of the debts owing by the deceased: that she consented to this, rather than suffer the sale of other property owned by the deceased, and which was, according to principles of the legal construction of wills, liable for those debts, before the property specifically bequeathed to her, and that she did this with the view of benefiting the estate, and for the purpose of saving the property which had been left for the maintenance of the family and education of the children, and which the administrator represented to her, would otherwise have to be sold for the payment of the debts. The bill also charges that at the time of the marriage of the complainants, Nancy Skeggs had a crop growing on the land so bequeathed to her, which was afterwards gathered and appropriated by the administrator.
Three questions are now presented for the consideration of the court. First, what interest did Nancy Skeggs take under the will 1 Second, is she entitled to be allowed for the hire of the negroes appropriated to the payment *33 of the debts of the estate, out of ahy other property belonging to the deceased, which was first liable for the pa3unent of these debts ? And third, is she entitled to be allowed .for the value of the crop growing on the land at the time of her marriage, and which was appropriated by the administrator?
1. It is argued that the bequest of the land and negroes to Nancy Slceggs, as specified in the will, is a bequest for life, upon condition that she should not marry again, which condition operates in restraint of marriage, and is void as being against public policy.
We do not deem it necessary to enter into an investigation in relation to the law upon conditions in restraint of marriage, and how far devises are or are not affected by such conditions, because we are clear that there is no condition to this devise in restraint of marriage; that it is not a devise for life, to be avoided by a subsequent marriage, but a devise duranto viduitate, charged with the support, maintenance and education of the children, which devise, was to become inoperative, upon the subsequent marriage of the wife, and an entire and different disposition of the property to be made thereon; that is, that during the widowhood of the wife, she was to have entire possession and control over the lands and negroes, which form the body of the bequest, for her own support, and the maintenance and education of-the children ; but if she should afterwards choose to marry again, in that event, the lands were to become the absolute property of the testator’s four sons, William, Henry, John and Eli; and one of the negroes, Ned, was to be hers absolutely, in her own right, and the others, to be divided among all his children share and share alike. Here is no' condition in restraint of mar *34 riage: on the contrary the happening of such an event is contemplated, and provision made for it. The estate in this property with the trust attached thereto, upon the happening of this event is to become inoperative ; the wife ceases to be charged with the maintenance and education of the children ; the fund for that purpose is taken out of her hands, with the exception of the negro, Ned, who is given to her absolutely, and appropriated directly to the children. There can be no objection to such a devise as this; there was no design on the part of the intestate, to give an estate for life, in the property devised to his wife, subject to be divested upon her marriage; she was not the only or the main subject of the devise, the children of the testator were as much the object of his bounty as his wife, and are as anxiously provided for by his will. The devise is for their mutual benefit. From the confidence reposed in his wife, the testator was willing that she should, provided she remained mistress of herself, have the control, possession and use of this, the principal portion of his estate, during her life, without being compelled to account for any surplus of profits, over and above what might be necessary for her support, and the maintenance and education of her children, having full faith that she would, when uncontrolled, deal justly with her children, and at her death, the body of the property and the income thereof would be theirs. But he did not have the same confidence, provided she married and thus submitted herself to the control of another, and he therefore did not choose to subject the fate of his children to her in this contingency, and provides for the consequent cessation of the trust, and a distribution of the property according to his conception of what was just and equitable, not forgetting *35 to make provision for herself upon this event. She chose to marry, and must abide the consequences, keep what is given to her, and surrender the balance to her children as provided for in the will.
2. Js she entitled to be reimbursed, for the hire of the negroes which, during her widowhood, was appropriated to the payment of the debts of the estate, out of the other property of the estate, which, by law, was first liable therefor? We think she is. The property specifically bequeathed to her, was not liable for the debts of the estate, until all the other property not appropriated by the will was exhausted; if that were sufficient to have paid the debts, she had the right to have had it so applied, and if she permitted the hire of the negroes, which was hers in her own right, to be appropriated to that purpose, whereby the other property was exempted, she is entitled to be remunerated out of it, to the extent Of her advances, because she, taking only under the will, had no interest in the undevised property, and any payment made out of her legacy for the exemption of such property from the debts wherewith it was charged, was money expended for the benefit of the children with which her estate was not charged by the will, and which must be repaid to her, if such property be sufficient to the full amount advanced, if not, to the extent to which it will go.
3. Is she entitled to the crop growing upon the land devised to. her, at the time of her marriage, as emble-ments? We think clearly not; whenever an estate in lands is to be determined upon a contingency, if that contingency happen by the act of God, or the adverse party, the tenant or his representative, as the case may be, is entitled to all growing crops as emblements, but *36 the contrary rule prevails when the contingency happens by the act of the tenant in possession ; then it is his own folly to put an end to the estate at a time when there are growing crops upon it, and he cannot complain that he is not permitted to enter afterwards and gather them. The marriage of this woman was her own act, her estate in the lands ceased immediately upon the happening of the event, and she loses the emblements.
The decree of the Chancellor will therefore be reversed and modified according to this opinion.
The case will be referred to the Clerk and Master to state an account, upon the second proposition discussed and determined, showing how much and what kind of property there was belonging to the estate, and which was, at the death of the testator, liable in the first instance, and before the legacy of the wife, for the payment of debts; how much money, the proceeds of the hire of the negroes devised to the wife, was appropriated by the administrator to the payment of the debts in exoneration of the property, and how much, if any, of this property or the proceeds thereof was appropriated by the wife, or for her use, and report accordingly.